Counsel, you may approach and proceed. Thank you. Good afternoon, your honors. May it please this honorable court. My name is Ian White and I represent the appellate QBE Insurance in this matter. I'd like to begin by addressing the issue of this court's jurisdiction as requested by this honorable court. On the date of the arbitration, hearing, and trial of this claim, prior to the closing of proofs, Petitioner amended his application for adjustment of the claim to allege a repetitive trauma accident with a manifestation date of October 14, 2010. The previously alleged accident date was May 12, 2009. When the accident date was changed to October 14, 2010, the claim then fell under an insurance policy that plaintiff had with QBE Insurance policy. Didn't the parties stipulate that as a manifestation date? Yes they did, your honor. However, the fact that QBE Insurance had insurance coverage covering the date of October 14 was not realized by the parties until after the arbitration trial was concluded. And as a result, appellant QBE Insurance became aware of the alleged accident injury after the arbitration hearing had taken place and proves it closed. The arbitrator found in favor of the defendant and appellant QBE Insurance motioned the Illinois Workers' Compensation Commission to be added as a named party. Counsel, can we stop you right there? Does the act provide for intervention following the 19B award? Section 4G is the basis that appellant sought before the commission. While this court has previously held that a 19G enforcement of judgment proceedings is not acceptable for a party to be named in an enforcement of judgment proceedings if that was the case, but in this case the appellant was named as an added party prior to the commission's final decision. But that doesn't answer the question. What right do you have to be a party to begin with? 4G merely says if the employer doesn't pay, you have to pay. It's all it says. It does. So it's not necessarily exclusive of saying that only, it doesn't necessarily use exclusive language that says that only if an employer is refusing to make payment does the insurance party have to pay. So the act doesn't, to be candid about it, the act doesn't expressly authorize the intervention, correct? Expressly, does it? Yes, I agree with that. Then let me ask the alternative question. Do you have any case law that indicates the insurance company has the right to intervene where the claimant has filed the action against the employer only? Do you have any case law that says that? Expressly? No, Your Honor. Well, how about impliedly? Yes, there is case law that this court has heard before where it's been more of a claimant who has attempted to add an insurance carrier after a final order has been issued in an enforcement proceedings issue. And so in this case, it was before the final order had been issued by the commission. But that's in the case the employer refuses to pay. Then they go up to the insurance company and use the acts as they can. And so since the 4G does state that the insurance carrier will be primarily liable for work injury that occurs under their dates of coverage, and then the next sentence within 4G states that an insurance carrier can be named. Does it say the insurance company has the right to intervene? Is that magical language used? It's not in 4G, Your Honor. The only thing that 4G does is it differentiates from what happens on the tort side. If a defendant doesn't pay the judgment, I suppose you can get subrogated to the defendant's rights against his insurance company and then sue on the policy. But in this particular case, 4G eliminates the need. 4G just turns around and says that if the employer doesn't pay, the injured employee can go directly against the insurance carrier. But where does it ever give the insurance carrier the right to become a party on his own motion? Well, if QBE had not been allowed to enter their appearance by the commission, then it would have been in the claimant's and defendant's position to have to add the party. And if QBE Insurance Appellant wasn't named prior to the final order being issued by the commission, then the claimant might have been barred from being able to add QBE as the named party. Why would the claimant have been barred to sue if the employer didn't pay? Well, the final order has been made. If we had reached the point where we needed a 19G enforcement of judgment proceedings, and if that was the case and we reached that point, then the defendant in this case would not be, at that point in time, allowed to add QBE insurance at that time. Why? Because this court has held that in 19F or 19H, you have a natural right to appeal from your commission to the circuit court to the appellate court if you timely appeal. However, if you're not appealing from the 19F or the 19H, if you're appealing from a 19G point of view, then that becomes an enforcement of judgment type of proceeding. Counsel, there's no case on that. Would you be candid enough to say this is a case of first impression? Yes, Your Honor. Okay, so give us your argument in summary, succinctly. What is your strongest argument as to why you had the right to intervene? Because we will be found primarily liable, and we will have to pay if you find this to be a compensatory claim. Well, that's true in every workers' compensation case. The insurance carrier has the same potential that you have in this case to be named primarily liable. So your suggestion is that in every workers' compensation case, the insurance carrier has a right to intervene and become a party? If they will be found liable, and they will be found responsible to make payments, they would have a right to defend their interest, to fully vent out whether or not this is a compensable claim and whether or not they should be required to pay compensation under the Act. In every case? If they have insurance coverage, if an insurance carrier has insurance coverage that covers the date of an alleged accident and a claimant wishes to pursue a claim. That's true in the majority of cases. If the insurance carrier has coverage and will have to pay for it, then they should have the ability to be able to do that. You've got a contract with coverage with the employer, right? Yes. What does that contract say about notice of claim and duty to defend and duty to indemnify? Well... Isn't that the real issue here? Yes, and I believe we would have a duty to defend. Well, it depends on what your contract language says. If QBE had an alternative here, instead of intervening as a separate party, why didn't QBE just pick up the defense for the employer and appeal on behalf of the employer? Well, at that time... It's not the employer appeals, is what I'm saying. At that time, there was another counsel who was representing a different insurance company on behalf of the employer at that time, and as opposed to perhaps him having withdrawn his appearance and us having re-entered our appearance on his behalf, I believe we felt that our interests were not aligned at that time, and that's why we asked to be added as a separate party. It may not be relevant, but speaking of alignment of interests, are you claiming any prejudice here? Was there evidence that wasn't presented that the arbitration that you believe would have been specifically unique and would have been helpful for your company? No, Your Honor. Okay. And so if we could perhaps address the question of why the commission's order was against the math, I think you better stick to the jurisdiction thing and convince us that we have it first before we start talking about the merits of the case. Your motion before the commission was premised on 4G, right? Yes, Your Honor. Okay. And Justice Hudson was asking about your strongest case for, if this is a case of first impression, what is the strongest basis for finding that you have the ability to intervene here? If it's not 4G here, and Justice Hoffman has already gone over 4G with you, what is it? Where are you at on that? What is the strongest basis? Well, Your Honor, while 4G is admittedly not explicit about providing a right to the insurance provided to be added as a named party, the intent of 4G, which calls for the insurance carrier to be primarily liable, and it does say that an insurance party can be named as an added party, the language isn't restrictive of saying that a claimant is the only one who's allowed to add an insurance carrier as a named party. And had 4G had language, and while that may oftentimes be when 4G gets utilized, and that might be why we're here at a first impression on this issue, because usually it is more of a claimant that would be worried about adding an insurance carrier to a claim, but since 4G is not restrictive on its face, and since I think we have to take the statute on its face, and since I think what 4G is getting at, insurance carrier is primarily liable for a work claim that falls within their policy. Let me see if I can call out the essence of your argument. What you seem to be saying is, look, the Act doesn't specifically prohibit it, the Act doesn't specifically address it, the case law doesn't say that either. You're saying there seems to be some logical reason why the insurance company would come in because they're ultimately liable. Is that basically what you're asking us? Yes, with what 4G is getting at with putting primary liability on the insurance carrier. Should we be rewriting, should we take your invitation up to rewrite the Act? No, you already have. Do you see that as an issue here at all? I think it may, since 4G does not expressly provide an insurance carrier the right, but it also doesn't expressly provide the right only to the claimant, I think we have to look at what 4G was getting at. Well, shouldn't the legislature make that call? Well, but since the legislature was not restrictive in their language, I don't think they intended for an insurance carrier not to be able to enter into a claim and vent out whether or not they should be liable to pay. And so I think 4G gets at that it's insurance carriers that are primarily liable and they can be named as an added party. But you're right, it does not say expressly who has the right to add the named party. In advance of argument, you were invited to bring today any research results bearing on this issue of jurisdiction. You've indicated you can't find anything in terms of case law that would support your position. What about in the parallel universe of personal injury? Is there anything there that would give support to this proposition that you're asserting that an insurance company can step in as a party when we're not talking about spoliation of evidence, we're not talking about any of these unique circumstances, we're just strictly talking about the liability. Have you looked there? My focus was primarily on workers' compensation guidelines, Your Honor. He's answered my question. Okay. As to your position. Okay. Thank you, Your Honors. May I have permission to proceed to addressing the issue of the manifest weight of the evidence in the commission's order at this time? Looks like you guys have one minute left. Could you address this succinctly in one minute? Yep. Sounds good. Okay. There was a stipulation that was agreed to at this trial between the parties, and it basically was that the IME causation opinion by Dr. Brown, if it was not found to be substantially accurate, if the history that petitioner gave to Dr. Brown was not found to be substantially accurate, then his opinion would be disregarded. And so that creates a unique perhaps focus for looking at this claim because that is just the stipulation. So if it's not substantially accurate, then his opinion is to be disregarded and there's no other causal connection opinions in the record. In this case, petitioner's defendant's testimony contradicted the testimony of his own treating doctor, Dr. Chen. Dr. Chen contradicted the defendant's testimony, saying that the defendant did not ever mention symptoms to him over the 11 months of treatment that he provided to the defendant. Additionally, when the defendant first sought treatment with Dr. Bassman, about a year and a half after the onset of his symptoms, the records note right elbow and wrist pain only, and the word bilateral is crossed off. And so it wasn't until about two months later on the next follow-up that we actually have our very first medical record addressing left upper extremity symptoms. And so also on that Dr. Bassman's record, it said he's here for a new problem. So we've got contradictory testimony with his main treating doctor, with the first doctor he goes and he seeks treatment from, bilaterals crossed off, it's a new problem. He never reported the injury to his employer until he filed an application for adjustment of claim. And that was again about a year and a half after the symptoms onset. And so based on defendant's testimony being contradicted by his treating doctor and surgeon, based on Dr. Bassman's record noting new problem and actually crossing off the left arm, and then defendant not reporting the symptoms to his employer. Counselor, your time is up. Okay. Thank you, Your Honor. Okay. Thank you. Ma'am, please record. Counselor. Good afternoon. My name is Dan Junker. I represent Von Boges. I've had the case the whole time and this is a case against the employer. It's a worker's compensation claim. We filed the claim against the employer on the day of the arbitration to conform the pleadings to the proof. We amended the application to change the date of manifestation to October 14, 2010. The defense attorney at the time, who's no longer involved in the case, he stipulated to it, he agreed the manifestation date was the date that I amended it. It just so happens that neither the defense counsel nor I were aware that his insurance company did not have the coverage. That's the problem. Okay? They got a great defense. They had a defense exam with Dr. David Brown. They didn't like his opinion. They stipulated that if the history provided by the employee was accurate, Dr. Brown's opinion would be that this claim is work-related. If the history is inconsistent or contrary to the history given to Dr. Brown, then Dr. Brown's opinion would be it's not work-related. Well, the arbitrator found this case compensable. The commission found the case compensable. Before we get back into that, are you agreeing that the insurance company has a right to intervene under the act? No, I don't think it's necessary. I have two cases that say that it's not allowed. I have the Abra case versus American Home, and I have the McInerney case versus Butsinger. They say what? Well, they refused to allow, in the Abra case, they refused to allow American Home to be named as a party. But the McInerney case, they refused to allow State Farm to be named as a party. Was that a little different than a right to intervene? They were different cases. Right. I haven't found anything on point. This is a case of first impression on the insurance company's request to intervene. Yes, Your Honor. Okay. So let's get back to jurisdiction. I think I strayed. I see nothing in the law that says that the insurance company has a right to intervene. This is a direct action against the employer. The case was found to be compensable. The employer had a lawyer. The lawyer put on a defense, cross-examined the witnesses, had a defense exam. Did you object? I did object to the motion to intervene. And what the commission's? I mean, was it based on the inability of the insurance company to intervene as a party? I didn't see any authority under the law to allow them to intervene. Did you object to the jurisdiction before this court? No, I objected in front of Commissioner Donahue. While the claim was pending on commission, on review, they filed a motion for Lee to intervene, and I objected at that time, and my objection was noted on Commissioner Donahue's order. I did not voice an objection. You did not cross appeal? No, I did not. So you would be left in a dilemma. I take it you don't want us to dismiss this for lack of jurisdiction, do you? No, sir. So, I mean, last week was my first notice that this was a jurisdictional issue, and I look at it as a direct action against the employer, and I think this is a matter between the insured, the employer, the insured, and his insurance company as to whether or not there's going to be coverage. Well, you prevailed at the commission level, didn't you? Yes, Your Honor. So if there's no jurisdiction, why would you want to find that the case is over? It shouldn't even be here. Well, I agree. Well, I guess what I'm saying is that I guess I would have moved to raise that issue as urgently as possible. Well, I didn't raise that issue. But I agree. It probably, you know, I guess I could have raised it last week when I became aware of it. When the commission order was passed, right. But when I received your order. It is a case of first impression. I mean, the only case I could find was the Aber case and the Buxinger case. Those aren't really, those are both collection cases. You know, those are 19G cases. We're here on a 19F. This is a straight appeal on the merits. And so you leave it to us to decide if we want to rewrite the F, right? I don't think you're going to do that. Well, this just shows what's behind the curtain. The reality is these cases aren't against the employer. They're against the insurance company. Well, that is the reality of everything. Yeah, so we're just pulling the curtain back, aren't we? Well, that's true. So to speak. Sure, I agree with that. Just to be clear, you agree, don't you, that if we dismiss this appeal, then the commission's decision stinks. Absolutely. Because no real party appealed the commission's decision. Absolutely. There's no reversal of the findings of the commission. You've got a little bit of a problem on your hands. Because having stipulated to the manifestation date, you and the other insurance companies stipulated yourself right into his coverage. And the next thing he's going to do is raise a policy defense when you try and collect from him. That's correct. So you may have nothing. You're absolutely right. This QBE insurance company could file a declaratory judgment saying that there's no coverage because their insurer did not notify them in a timely manner. And so now I'm left to collect against the employer. So they haven't filed a debt action? I have not. They haven't? No, not to my knowledge. Okay. But, I mean, I think that's the next case that's going to be filed. It might be back up here in five more years. You never know. You never know. No, it'll be down in Mount Vernon. It's just a situation where the defense attorney at the time, you know, the first thing you learn as a defense attorney is you make sure you find out what your coverage period is before you agree to anything. And if I would have been aware of it, I would have said, oh, let's give the insurance company some notice here. You know, dates of accident are amended all the time to conform to the proof. The manifestation date is the date of the nerve test, kind of an artificial accident date. And if I would have been aware of this, the first thing I would have said, well, you better notify this insurance carrier. You may not even be the lawyer on this case. They want their own lawyers. Well, this would be a good practice note for some publications, wouldn't it? Yeah. In your remaining time, do you want to address the merits of the appeal? How much time do I have? You've got more than a few minutes. Very briefly, as you know, the manifestation date is when a reasonable person can figure out that the medical condition they have is work-related. And the only thing I'm going to say about this is they sent this guy, my guy, for a defense exam. And the diagnosis of their doctor, their hand surgeon, Dr. David Brown, is possible, get this, possible carpal tunnel and cubital tunnel. He didn't say cubital tunnel and carpal tunnel. He said possible. He orders a nerve test. The nerve test is done on October 14, 2010, which showed severe carpal tunnel and cubital tunnel. So that's why I chose that date as the manifestation date was the date that we found out what this gentleman had. And they stipulated to the manifestation date. Now, if you look at the testimony of the employee, his testimony is consistent with the history given to the defense doctor, Dr. David Brown. Dr. David Brown gave his opinion on causation. If the history is accurate, then the medical condition is work-related. That was very simple. And if you look at his history, he had the symptoms during his employment. He complained one time on his last day, on the day of his last day of work, or the day after he went in for shoulder surgery that he had bilateral arm pain. He mentioned this to his family doctor. During his employment, his family doctor blew him off, said he had arthritis, just arthritis, but he complained of bilateral pain. The family doctor just told him he had arthritis and misdiagnosed the carpal tunnel and the cubital tunnel. This was during his employment. And the arbitrator, the commission, and the circuit court all correctly found that this case is compensable. Thank you. Thank you, counsel. Mr. White, you may reply. Somehow, between arbitration and the hearing before the commission, UBE found out this is within the coverage of their policy. How did that happen? I was not the counsel at that time, Your Honor, so I'm not as— Somebody noticed from somebody. Yes. I imagine the insurance provider who was participating in that hearing realized that they didn't have accident dates of coverage, and so I would imagine probably the counsel spoke with the insurer, the employer, and then it was realized that actually for that date of coverage, it would be QE insurance. But I wasn't the counsel, so I'm not exactly sure. And did the then counsel for the employer refuse to withdraw? He submitted a brief, actually, before the commission, and he still continued to participate to an extent, but then he withdrew. Was there a request made for QBE to bring in their own counsel for the hearing before the commission and represent the employer? It was QBE's own direction, decision to bring in their own counsel. And intervene rather than defend the employer? Yes. Now, the first manifestation date that you agreed upon took the coverage out of the other insurance company? Yes, it was a 2009— But as filed, it was within the coverage period of the prior insurance company? Yes, that's right. Did you learn anything interesting here this afternoon? Yes, and I'm sure once the Senate will reach a decision, I'll learn more. But yes, absolutely. That is sort of something I absolutely did learn in this case, to make sure you have coverage for the date of accident. That is unquestionably a lesson in this for all parties. It sure helps that insurance counsel in a company when that counsel is able to get a date out of coverage, doesn't it? Pardon, Your Honor? It sure helps that insurance company when their counsel is able to get a date outside the coverage period. That could have been a victory of its own. So it's a victory? Yes, you're right. They weren't found responsible for the injuries. It's not under the coverage. Yes. But as defendant's counsel has accurately stated, there was a stipulation at trial about whether or not the history provided about the onset of symptoms to Dr. Brown. Whether or not if that was accurate, then his opinion would stand and there would be an aggravation and the claim would be compensable. But if the history was not found to be substantially accurate, then his opinion would be disregarded. And so when looking closely at the onset of the symptoms, it wasn't verified by the treating surgeon who treated his right shoulder for a different work injury. But he didn't substantiate that complaints were made. There are two different references in the records that are cited in the briefs. One is on the first state of treatment with that Dr. Qian who contradicts defendant's testimony. But there was complaints of right elbow pain. And Dr. Qian, actually, his opinion was that it was degenerative disease of the elbow or osteoarthritis. So he did address that right elbow complaint. And then before defendant had surgery on his right shoulder, there is a checkbox with numbness and pain for bilateral arms. Defendant was asked about this checkmark at trial, and he said, well, that was about my right shoulder injury. And so that was that. But I still will look to his own treating doctor, Dr. Bassman's record. The first time defendant goes to see Dr. Bassman, it says new problem, and it says right arm arrest. And actually, it said bilateral, but bilateral was crossed out. And it wasn't until two months later that actually both symptoms, both upper extremities are symptomatic. And so for this year and a half gap of not seeking treatment, and then the first time he seeked treatment, the whole left upper extremity wasn't mentioned. He contradicts Dr. Qian's testimony. He never tells his employer, and I believe he even admits that he never told his employer about the symptoms. And it wasn't until the application adjustment claim was filed in early 2010. And so there are substantial evidence to question the history provided to Dr. Brown. And so since we have this stipulation where things can swing one way or another based on Dr. Brown's history, it can perhaps allow this honorable court to just focus in on, well, was that history substantially accurate as provided that symptoms began in the fall of 2008? And so I think there's a lot of evidence. Counsel, your time is up. Thank you, counsel. Your disposition shall issue in due course. Thank you, counsel.